THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ROSMARY ABREU,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**PIMENTON PARRILLA & BAR, LLC,**<br>**BRUCE GARCIA BOHORQUEZ,**<br>**XIOMARA GARCIA,**<br><br>**Defendants.** | Civil Action No. _____ |

# COMPLAINT

Plaintiff Rosmary Abreu ("Abreu") brings this Complaint against Defendants Pimenton Parrilla & Bar, LLC ("Pimenton"), Edwin Garcia Bohorquez ("Bohorquez"), Xiomara Garcia ("Garcia") (collectively "Defendants") and shows this Court as follows:

**INTRODUCTION**

1.

This is a wage and hour case.

2.

Defendants operate a restaurant and bar in Buford, Georgia where they

employed Abreu as a server; but failed to pay her any wages. Abreu's compensation came solely in the form of tips from Defendants' customers. Defendants also required Abreu to pay them a portion of her tips ("kickbacks") as a condition of employment. Defendants thus failed to pay Abreu the FLSA minimum wage. In addition, Abreu frequently worked more than forty (40) hours per work week. Defendants also failed to pay Abreu an overtime premium for work in excess of forty hours in a week.

**JURISDICTION AND VENUE**

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA §16(b), 29 U.S.C. §216(b), 28 U. S.C §§ 1331 and 1337 because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because Pimenton's principal business address is located in this judicial district, Bohorquez and Garcia each reside in this judicial district, and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**PARTIES**

5.

Abreu resides in Gwinnett County, Georgia.

6.

During the Relevant Time Period (*i.e.,* February 1, 2017 through and until March 3, 2018), Defendants operated a restaurant and bar under the trade name of Pimenton Parilla Bar and Grill located at 1570 Buford Hwy NE, Buford, GA 30518.

7.

Pimenton is a domestic limited liability company organized under the laws of the State of Georgia.

8.

Pimenton can be served via its registered agent, Xiomara Garcia, at 1058 County Court, Lawrenceville, Georgia 30044.

9.

Pimenton is subject to the personal jurisdiction of this Court.

10.

Bohorquez is a resident of Gwinnett County, Georgia.

11.

Bohorquez is subject to the personal jurisdiction of this Court.

12.

Bohorquez is a manager and/or supervisor at Pimenton.

13.

Bohorquez holds an ownership interest in Pimenton.

14.

Bohorquez can be served with process at 1058 Country Court, Lawrenceville, Georgia 30044 or wherever he can be found.

15.

Garcia is a resident of Gwinnett County, Georgia.

16.

Garcia is subject to the personal jurisdiction of this Court.

17.

Garcia is a manager and/or supervisor at Pimenton.

18.

Garcia holds an ownership interest in Pimenton.

19.

Garcia can be served with process at 1058 Country Court, Lawrenceville, Georgia 30044 or wherever she can be found

**ENTERPRISE COVERAGE**

19.

At all times during the Relevant Time Period, Pimenton has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

20.

During 2017, Pimenton had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

21.

During 2018, Pimenton had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

22.

At all times during the Relevant Time Period, Pimenton was an enterprise engaging in interstate commerce.

23.

At all times during the Relevant Time Period, Pimenton purchased, stored, sold and served alcoholic beverages that were produced and shipped from outside of the State of Georgia.

24.

At all times during the Relevant Time Period, Pimenton purchased, stored, sold, prepared and served food products that were produced and shipped from outside of the State of Georgia.

25.

At all times during the Relevant Time Period, Pimenton accepted credit card payments from customers and processed such transactions through financial institutions located outside the State of Georgia.

26.

During 2017, Pimenton had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

During 2018, Pimenton had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2017, Pimenton had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

29.

During 2018, Pimenton had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

30.

At all times during the Relevant Time Period, Pimenton has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**INDIVIDUAL COVERAGE**

31.

At all times during the Relevant Time Period, Abreu was "engaged in commerce" as an employee of Defendants as defined in the FLSA, § 6(a), 29 U.S.C. § 206(a) and § 7(a)(1), 29 U.S.C. § 207(a)(1).

**STATUTORY EMPLOYER ALLEGATIONS**

32.

At all times during the Relevant Time Period, Pimenton was an "employer" of Abreu as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

33.

At all times during the Relevant Time Period, Abreu was an "employee" of Pimenton as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

34.

At all times during the Relevant Time Period, Bohorquez exercised control over the work activities of Abreu.

35.

At all times during the Relevant Time Period Bohorquez was involved in the day-to-day operation of Pimenton.

36.

At all times during the Relevant Time Period, Pimenton vested Bohorquez with supervisory authority over Abreu.

37.

At all times during the Relevant Time Period, Bohorquez exercised supervisory authority over Abreu.

38.

At all times during the Relevant Time Period, Bohorquez scheduled Abreu's working hours or supervised the scheduling of Abreu's working hours.

39.

At all times during the Relevant Time Period, Bohorquez exercised authority and supervision over Abreu's compensation.

40.

At all times during the Relevant Time Period, Bohorquez was an "employer" of Abreu as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

41.

At all times during the Relevant Time Period, Abreu was an "employee" of Bohorquez as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

42.

At all times during the Relevant Time Period, Garcia exercised control over the work activities of Abreu.

43.

At all times during the Relevant Time Period, Garcia was involved in the day-to-day operation of Pimenton.

44.

At all times during the Relevant Time Period, Pimenton vested Garcia with supervisory authority over Abreu.

45.

At all times during the Relevant Time Period, Garcia exercised supervisory authority over Abreu.

46.

At all times during the Relevant Time Period, Garcia scheduled Abreu's working hours or supervised the scheduling of Abreu's working hours.

47.

At all times during the Relevant Time Period, Garcia exercised authority and supervision over Abreu's compensation.

48.

At all times during the Relevant Time Period, Garcia directly and indirectly controlled Abreu's work schedule.

49.

At all times during the Relevant Time Period, Garcia was an "employer" of Abreu as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

50.

At all times during the Relevant Time Period, Abreu was an "employee" of Garcia as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

51.

At all times during the Relevant Time Period, Pimenton directly and indirectly controlled servers' work schedules.

52.

At all times during the Relevant Time Period, Pimenton vested its managers with the authority to impose discipline upon its servers, including warnings, suspensions, and terminations.

53.

At all times during the Relevant Time Period, Pimenton's managers supervised Abreu on a day-to-day basis.

**FACTUAL ALLEGATIONS**

50.

Pimenton employed Abreu from February 1, 2017 through August 31, 2017 and again from February 5, 2018 through March 3, 2018.

51.

At all times during the Relevant Time Period, Pimenton employed Abreu as a server.

52.

At all times during the Relevant Time Period, Abreu worked 5 days during most work weeks.

53.

At all times during the Relevant Time Period, Abreu worked 55 hours during most work weeks.

54.

At all times during the Relevant Time Period, Pimenton did not employ Abreu in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

55.

At all times during the Relevant Time Period, Pimenton did not employ Abreu in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

56.

At all times during the Relevant Time Period, Pimenton did not employ Abreu in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

57.

At all times during the Relevant Time Period, Pimenton did not employ Abreu in the capacity of an "outside salesman" so as to be exempt from the minimum and

maximum hour requirements of 29 USC § 213 (a).

58.

At all times during the Relevant Time Period, Abreu was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

59.

At all times during the Relevant Time Period, Abreu was not exempt from the maximum hours requirements of the FLSA by reason of any exemption.

60.

At all times during the Relevant Time Period, Pimenton failed to pay Abreu any wages or compensation whatsoever.

61.

At all times during the Relevant Time Period, Abreu's sole form of remuneration was the receipt of tips from Defendants' customers.

62.

Defendants have not relied on any letter ruling from the Department of Labor stating that its requirement that servers work on a tips-only basis is a practice that is permitted under the FLSA.

63.

Defendants have not relied on any legal advice stating that it requirement that servers work on a tips-only basis is a practice is permitted under the FLSA.

64.

At all times during the Relevant Time Per, Defendants required as a condition of employment that Abreu to pay a portion of her tips ("kickbacks") to Pimenton and its owners, agents, and employees.

65.

At all times during the Relevant Time Period, Abreu paid $20.00 in kickbacks to Pimenton during each work week.

66.

Defendants knew or should have known that the FLSA applied to Abreu.

67.

At all times during the Relevant Period, Defendants failed to compensate Abreu at a rate of at least $7.25 per hour for each hour she worked.

68.

At all times during the Relevant Period, Defendants willfully failed to compensate Abreu at a rate of at least $7.25 per hour for each hour she worked.

69.

At all times during the Relevant Time Period, Abreu regularly worked more than forty (40) hours per week.

70.

At all times during the Relevant Time Period, Defendants failed to pay Abreu at

one-and-one-half times her regular rate for work she performed in excess of 40 hours in a workweek.

71.

At all times during the Relevant Time Period, Defendants willfully failed to pay Abreu at one-and-one-half times her regular rate for work she performed in excess of 40 hours in a workweek.

## Count I
## Failure to Pay Minimum Wage

72.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

73.

At all times during the Relevant Time Period, Abreu was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

74.

At all times during the Relevant Time Period, Defendants failed to compensate Abreu at an hourly rate above or equal to the minimum wage.

75.

At all times during the Relevant Time Period, Defendants willfully failed to compensate Abreu at an hourly rate above or equal to the FLSA minimum wage.

76.

Defendants' mandate that Abreu pay kickbacks to the restaurant and its managers, and other employees violated the "free and clear" requirement set forth in 29 CFR 531.35.

77.

Abreu is entitled to recover from Defendants, jointly and severally, all kickbacks that she was required to pay as a condition of employment.

78.

Abreu is entitled to payment of minimum wages by Defendants, jointly and severally, in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

79.

As a result of the willful failure to pay minimum wages as alleged above, Abreu is entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

80.

As a result of the failure to minimum wages as alleged above, Defendants are jointly and severally liable to Abreu for her costs of litigation, including her reasonable attorney's fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

## Count II
## Failure to Pay an Overtime Premium

81.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

82.

At all times material hereto, Abreu was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

83.

At all times during the Relevant Time Period, Abreu regularly worked in excess of forty (40) hours per week as a server for Defendants.

84.

At all times during the Relevant Time Period, Defendants failed to compensate Abreu at one-and-one-half times her regular rate for work in excess of forty (40) hours in any work week.

85.

At all times during the Relevant Time Period, Defendants willfully failed to Abreu at one and one half times her regular rate for work in excess of forty (40) hours in any work week.

86.

Abreu is entitled to payment from Defendants, jointly and severally, of due but unpaid overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

87.

As a result of the failure to pay overtime compensation as alleged above, Abreu is entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

88.

As a result of the failure to pay overtime compensation as alleged above, Defendants are jointly and severally liable to Abreu for her costs of litigation, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

**WHEREFORE**, Abreu requests that this Court:

a. Award Abreu an amount to be determined at trial against Defendants, jointly and severally, in due but unpaid minimum wages due under the FLSA;

b. Award Abreu a like amount against Defendants, jointly and severally, in liquidated damages;

c. Award Abreu an amount to be determined at trial against Defendants, jointly and severally, in due but unpaid overtime wages due under the FLSA;

d. Award Abreu a like amount against Defendants, jointly and severally, in liquidated damages;

e. Award Abreu the amount that she paid in kickbacks plus an equal amount of liquidated damages;

f. Award Abreu prejudgment interest on all amounts owed;

g. Award Abreu her costs of litigation including her reasonable attorney's fees; and

h. Award any and such other relief this Court deems just, equitable and proper.

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC**

| | |
|---|---|
| 3100 Centennial Tower | */s/ Charles R. Bridgers* |
| 101 Marietta Street NW | Charles R. Bridgers |
| Atlanta, GA 30303 | Georgia Bar No. 080791 |
| 404.979.3150 | |
| 404.979.3170 (fax) | */s/ Kevin D. Fitzpatrick, Jr.* |
| charlesbridgers@dcbflegal.com | Kevin D. Fitzpatrick, Jr. |
| kevin.fitzpatrick@dcbflegal.com | Georgia Bar No. 262375 |

**COUNSEL FOR PLAINTIFF**